IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| RUPERT B., | CV 23-119-M-KLD |
| Plaintiff, | |
| vs. | ORDER |
| LEE DUDEK, Acting Commissioner of Social Security,[1] | |
| Defendant. | |

Plaintiff brings this action under 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 et seq.

I.   **Procedural Background**

Plaintiff first applied for Title II disability benefits in February 2011, alleging disability beginning on October 22, 2009. AR 215-216. Plaintiff appeared for an administrative hearing in May 2012, and an ALJ issued a decision denying Plaintiff's claim in June 2012. AR 20-34. Plaintiff sought judicial review, and in

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the current Acting Commissioner of Social Security is automatically substituted as the defendant for Martin O'Malley, the former Commissioner of Social Security.

July 2014 the Court remanded the case for further administrative proceedings pursuant to sentence four of 42 U.S.C. 405(g). AR 770-90, 1437.

Plaintiff's claim was denied again by the same ALJ after a second administrative hearing, and Plaintiff filed an action for judicial review. AR 746-62. In March 2017, the Court issued a remand order based on a joint stipulation by the parties. AR 1641-42. The stipulated order directed the ALJ to consider four items on remand: (1) consider, evaluate, and assign appropriate weight to the medical opinions of record, including Drs. Vanichkachorn and Butcher; (2) consider, evaluate, and assign appropriate weight to Rebecca Norton's "other medical source" opinion; (3) reevaluate the lay witness testimony from Mr. Cattlerin, and Plaintiff's wife; and (5) assess Plaintiff's symptom testimony under SSR 16-3p. AR 1641.

On remand, a different ALJ held the record open for additional evidence but denied Plaintiff's claim in December 2018 without holding another administrative hearing. AR 1658-1685. The Appeals Council granted Plaintiff's request for review and remanded the case to a different ALJ, who held supplemental administrative hearings in August 2020 and January 2021. AR 1484-1525; 1529-1567; 1699-1701. In March 2021, the ALJ issued a decision denying Plaintiff's claim, and Plaintiff again sought judicial review. AR 1437-68.

On May 10, 2022, the Court remanded the case for third time. AR 3681-3723. The Court upheld the ALJ's evaluation of Plaintiff's subjective symptom testimony, and her evaluation of the medical opinion evidence provided by Dr. Vanichkachorn, Dr. Jenko, Dr. Bukacek, and Dr. Martini. AR 3694-3713, 3717-3720. However, the Court concluded the ALJ erred in two respects: (1) by failing to provide germane reasons for discounting occupational therapist Rebecca Norton's "other medical source" opinion as to Plaintiff's hand limitations, AR 3713-16; and (2) by failing to provide germane reasons for rejecting the lay witness testimony of Plaintiff's wife, related to Plaintiff's hands, AR 3720-23.

In May 2023, another ALJ held the agency's fifth administrative hearing on Plaintiff's claim. AR 3571-3626. On June 20, 2023, the ALJ issued a decision denying Plaintiff's claim. AR 3517-53. The ALJ's final decision dated June 20, 2023, is the subject of this action for judicial review. Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

## II.    <u>Legal Standards</u>

### A.    Standard of Review

42 U.S.C. § 405(g) provides a limited waiver of sovereign immunity, allowing for judicial review of social security benefit determinations after a final decision of the Commissioner made after a hearing. *See Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A court may set aside

the Commissioner's decision "only if it is not supported by substantial evidence or is based on legal error." *Treichler*, 775 F.3d at 1098 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where evidence is susceptible to more than one rational interpretation," the court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).

**B.    Disability Determination**

To qualify for disability benefits under the Social Security Act, a claimant bears the burden of proving that (1) she suffers from a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of twelve months or more; and (2) the impairment renders the claimant incapable of performing past relevant work or any other substantial

gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A). *See also Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 416.920. If a claimant is found to be "disabled" or "not disabled" at any step, the ALJ need not proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005). The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, the ALJ considers whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). If so, then the claimant is not disabled within the meaning of the Social Security Act. At step two, the ALJ must determine whether the claimant has any impairments, singly or in combination, that qualify as severe under the regulations. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will proceed to step three. At step three the ALJ compares the claimant's impairments to the impairments listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii). If the ALJ finds at step three that the claimant's impairments meet or equal the criteria of a

listed impairment, then the claimant is considered disabled. 20 C.F.R.

§§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii).

If the ALJ proceeds beyond step three, he must assess the claimant's residual functional capacity. The claimant's residual functional capacity is an assessment of the work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); Social Security Ruling (SSR) 96-8p. The assessment of a claimant's residual functional capacity is a critical part of steps four and five of the sequential evaluation processes.

At step four, the ALJ considers whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. §§  404.1520(a)(4)(v) and 416.920(4)(v). The ALJ may satisfy this burden through the testimony of a vocational expert or by referring to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the ALJ meets this burden, the claimant is not disabled.

6

## III.  Discussion

The ALJ followed the five-step sequential process in evaluating Plaintiff's claim. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of October 22, 2009, through his date last insured of December 31, 2014. AR 3520. Because Plaintiff was last insured for disability benefits on December 31, 2014, he must establish disability on or before that date to qualify for benefits. At step two, the ALJ found that Plaintiff had the following severe impairments: bilateral rotator cuff tears, status post bilateral repairs; thoracic and lumbar degenerative disc disease; right cruciate ligament tear, status post reconstruction, partial medial and lateral meniscectomies, and chondroplasty; obesity; emphysema; bilateral hearing loss; and bilateral carpal tunnel syndrome. AR 3520. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or equals the severity of one of the listed impairments. AR 3525

The ALJ then found that, through the date last insured, Plaintiff had the residual functional capacity to perform light as follows:

> Specifically, the claimant was able to lift, carry, push, and pull 10 pounds frequently and 20 pounds occasionally with the upper extremities bilaterally, was able to lift no greater than 10 pounds overhead with the upper extremities bilaterally, occasionally able to push and/or pull with the right upper extremity, occasionally able to reach over shoulder level with the upper extremities bilaterally, and frequently reach laterally with the right upper extremity (no limitations with regard to reaching to the front with either upper extremity or laterally with the left upper extremity). The

claimant was frequently able to perform fine and gross manipulation bilaterally. The claimant was able to stand and/or walk about six hours in an eight-hour workday (with normal breaks), and sit for about six hours in an eight-hour workday (with normal breaks; normal breaks being defined as occurring every two hours with two breaks lasting at least 10 minutes and one break lasting at least 30 minutes). The claimant needed to avoid concentrated exposure to extreme cold, to vibration, to hazards such as unprotected heights and dangerous machinery, and avoid concentrated exposure to fumes, odors, dust, gases, and poor ventilation. The claimant was able to tolerate moderate noise levels (e.g. no exposure to noise of greater than 4/5 or 5/5 as define din the DOT and SCO). The claimant was able to understand, remember, and carry out simple, detailed and complex tasks, was able to maintain attention, concentration, persistence, and pace for such tasks for eight-hour workdays and 40-hour work weeks, was able to tolerate interaction with supervisors, coworkers, and members of the public, was able to tolerate usual work situations, and was able to tolerate changes in routine work settings.

AR 3528.

At step four, the ALJ found that Plaintiff was unable to perform any relevant work through the date last insured. AR at 3550. At step five, the ALJ concluded based on prior testimony by the vocational expert that, through the date last insured, other jobs existed in significant numbers in the national economy that Plaintiff could perform, including work as a cashier, sales attendant, and cafeteria attendant. AR. 3551. The vocational expert who testified at the May 2023 hearing on remand confirmed that an individual with Plaintiff's residual functional capacity would be able to perform these jobs. AR at 3551. The vocational expert further testified that, given all of the same factors, Plaintiff would also have been able to perform the job requirements of light-level work as a counter attendant and

ticket taker, and sedentary-level work as a receptionist and appointment clerk. AR 3551-52.

The ALJ then asked the vocational expert whether any of the above jobs would remain if Plaintiff was limited to only occasional bilateral gross and fine motor manipulation. AR. 3552. The vocational expert testified that if that were the case, Plaintiff would still be capable of performing the job requirements of cafeteria attendant, sales attendant, receptionist, appointment clerk, and counter attendant. AR 3552. Consequently, the ALJ concluded that Plaintiff was not disabled at any time from his October 22, 2009, alleged onset date through his December 31, 2014, date last insured.

Plaintiff argues the ALJ's decision on remand is not supported by substantial evidence and raises three issues on appeal. First, Plaintiff argues the ALJ did not provide clear and convincing reasons for discounting his subjective symptom testimony. Second, Plaintiff contends the ALJ failed to provide germane reasons for rejecting lay witness testimony provided by his now ex-wife, Dawn Noteboom. Third, Plaintiff argues the ALJ failed to provide germane reasons for discounting occupational therapist Norton's opinion regarding Plaintiff's hand limitations

## A.    Subjective Symptom Testimony

Where, as here, the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms

alleged and there is no evidence of malingering, the ALJ may discredit the claimant's testimony about the severity of those symptoms "only by offering specific, clear and convincing reasons for doing so." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). This standard requires the ALJ to "show his work" by providing a "rationale … clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). The ALJ's findings "'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter*, 806 F.3d at 493 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991)). In addition, the court is "constrained to review the reasons the ALJ asserts." *Brown-Hunter*, 806 F.3d at 492. This means the court "may not take a general finding" by the ALJ "and comb the administrative record to find specific" evidence in support of that finding. *Brown-Hunter*, 806 F.3d at 494. Rather, the ALJ is responsible for identifying the testimony he finds not credible, and linking that testimony to the particular parts of the record supporting his determination. *Brown-Hunter*, 806 F.3d at 494.

Plaintiff argues the ALJ failed to provide clear and convincing reasons for discounting his testimony as to the severity of his symptoms and limitations. Before turning to the merits of Plaintiff's argument, the Court addresses the law of the case doctrine, which "generally prohibits a court from considering an issue that has already been decided by that same court or a higher court in the same case." *Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016). The doctrine applies "to social security administrative remands from federal court in the same way [it] would apply to any other case." *Stacy*, 825 F.3d at 566. "The doctrine is concerned primarily with efficiency, and should not be applied when the evidence on remand is substantially different, when the controlling law has changed, or when applying the doctrine would be unjust." *Stacy*, 825 F.3d at 567. District courts in the Ninth Circuit, including in this district, "have applied the law of the case doctrine to Social Security cases when declining to reconsider issues that were decided by a prior remand order." *Hajostek v. O'Malley*, 2024 WL 2882578, at *4 (D. Mont. June 7, 2024) (citing several cases, including *Hammons v. Berryhill*, 2021 2805324, at *4 (D. Mont. July 6, 2021)).

In its May 2022 remand order, the Court upheld the prior ALJ's evaluation of Plaintiff's symptom testimony about his mental limitations and the severity of his physical pain. AR 3694-3700. As to the latter, the Court found that the ALJ properly discounted Plaintiff's statements about the severity of his low back and

right knee pain based on conflicting medical evidence and evidence of Plaintiff's activities, including the fact that he was able to ride a motorcycle during the relevant time period. AR 3696-3700. On the issue of Plaintiff's low back pain, the Court found the ALJ reasonably rejected Plaintiff's testimony about the severity of his symptoms based on imaging records, including a January 2014 thoracic MRI that showed only mild to moderate abnormalities, and a January 2014 lumbar MRI that showed no significant impairments or degenerative changes. AR 3699, citing AR 1453, 1225, 1226. The Court thus affirmed the prior ALJ's reasoning that the "medical evidence related to the claimant's knee and back supports no etiology reasonably expected to result in such severe pain symptoms that the claimant needs to lie down for multiple hours each day." AR 1454.

Plaintiff makes essentially the same argument in his current appeal, asserting that the ALJ improperly discounted his testimony as to his "need for recumbency" based on the medical evidence, including the very same imaging results. (Doc. 11 at 5-7). The ALJ permitted Plaintiff to testify at the May 2023 hearing on remand but made clear at the outset that, consistent with the Court's remand order, the purpose of the hearing was to address Plaintiff's ability to use his hands and upper extremities. AR 3577-78. Consistent with his prior testimony, Plaintiff stated during the May 2023 hearing that during the relevant time period he "had to recline" and lie down and rest for significant periods throughout the day. AR 3585,

3589, 3599. This testimony is not substantively different from Plaintiff's testimony at the January 2021 hearing, which was the subject of the Court's May 2022 remand order. Compare AR 3584-3601 with AR 1492-1506.

Because Plaintiff does not identify any substantially different evidence and the Court has previously affirmed the ALJ's reasoning, Plaintiff's argument that the ALJ erred by discounting his alleged "need for recumbency" is barred by the law of the case. To the extent it could be argued that the law of the case doctrine does not apply because Plaintiff testified at the May 2023 hearing to an even greater need for recumbency during the relevant period, the ALJ's permissibly rejected Plaintiff's testimony because it was inconsistent with the same imaging results, which showed only mild to moderate degenerative changes and no significant abnormalities. AR 3534-3535, citing AR 1225, 1226, 2684-85.

Plaintiff further argues the ALJ erred by citing his daily activities as a reason for rejecting his testimony about the severity of his pain and associated limitations. (Doc. 11 at 7-17). Again, because the Court upheld the ALJ's evaluation of Plaintiff's symptom testimony in its May 2022 remand order, and his testimony at the May 2023 hearing was not substantially different from his prior testimony, Plaintiff's argument that the ALJ erred by citing his various activities as a basis for discounting his symptom testimony is barred by the law of the case doctrine. But even if the law of the case doctrine does not apply, the ALJ appropriately found

13

that Plaintiff's activities were not consistent with his allegations of disabling pain and limitations.

At his May 2023 hearing, Plaintiff testified that during the relevant period he could work for approximately one hour at time before needing to lie down and rest, and had to stay in bed all day three days a week. AR 3589, 3599. Plaintiff also reported having difficulty using his hands for manipulative activities. AR 3587. However, Plaintiff also testified that during the relevant period he played pool every week at the bar and in his garage (AR 3591, 3600); rode his motorcycle one to two hours a week (AR 3594); did odd jobs like fixing his lawnmower and repairing small engines for his home-based business (AR 3584-85); replaced and painted the deck of his pontoon boat (AR 3596-97); and did some leatherwork (AR 3592). While Plaintiff alleged some difficulty with these activities and said others sometimes provided assistance, the ALJ reasonably found the fact that Plaintiff was capable of engaging in these activities undercut his testimony as to the severity of his limitations, including his alleged need for recumbency and his alleged "inability to perform fine and gross movements effectively." AR 3529.

Although Plaintiff contends the ALJ did not "address the nature, frequency, and duration" of his activities (Doc. 11 at 7), the ALJ specifically considered the amount of time Plaintiff spent on these activities each week. The ALJ permissibly

found evidence that Plaintiff regularly engaged in these activities even for short periods of time was inconsistent Plaintiff's allegations of disabling limitations.

### B.    Lay Witness Testimony

Plaintiff argues the ALJ did not provide germane reasons for discrediting lay witness testimony provided by his now ex-wife Dawn Noteboom. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("An ALJ need only give germane reasons for discrediting the testimony of lay witnesses."). In May 2012 and May 2015, Ms. Noteboom provided written statements describing Plaintiff's activities and limitations. AR 317, 1206-07. In its May 2022 remand order, the Court upheld the ALJ's evaluation of Ms. Noteboom's statements about the severity of Plaintiff's hip, back, and shoulder impairments, but directed the ALJ to reassess Ms. Noteboom's statements "relating to Plaintiff's hands." AR 3722-23.

On remand, the ALJ emphasized that Ms. Noteboom had "made no mention of claimant's hands even in passing or by reference" in her written statements, and had instead focused on Plaintiff's back, hips, and shoulder problems. AR 3546, citing AR 317, 1206-07. The ALJ found it significantly probative that Ms. Noteboom's May 2015 statement, which was written the same month that occupational therapist Norton opined about Plaintiff's hand limitations, "made no reference of any kind regarding difficulties manipulating, gripping, fingering, or feeling bilaterally." AR 3546. This was a sufficiently germane reason for

discounting Ms. Noteboom's written statements, which did not even address Plaintiff's alleged hand limitations.

In February 2023—several months after the Court's May 2022 remand order—Ms. Noteboom submitted another written statement in which she stated that Plaintiff has had difficulty using his hands for several years. AR 4007. Ms. Noteboom wrote that Plaintiff's hands have gotten worse over time, and that "[h]is hands get so that they hurt so bad after doing stuff that he can't use them." AR 4007. She wrote that Plaintiff "got rid of his motorcycle because he can't grip the handles" and if he was on "a long ride his arms and hands would either go numb or hurt so bad he was not safe." AR 4007.

The ALJ considered Ms. Noteboom's statement but gave it little weight because it did not address the relevant period prior to December 2014 and was instead reflective of Plaintiff's current condition. AR 3547. The ALJ also pointed to the lack of significant clinical findings during the relevant period, and the fact that Ms. Noteboom's 2012 and 2015 statements did not mention any problems with Plaintiff's hands. AR 3547. These were germane reasons for discounting Ms. Noteboom's February 2023 statement.

Ms. Noteboom also testified at the May 2023 remand hearing. AR 3601-3613. She recalled that during the relevant period Plaintiff typically worked on small engine repair one to five days a week, for a total of one to three hours a day.

16

AR 3602. She testified that she helped him shave and get dressed, and did all household chores. AR 3604-05. Ms. Noteboom further testified that Plaintiff had two to five bad days a week that he spent lying in bed. AR 3608.

The ALJ found Ms. Noteboom's statements as to the severity of Plaintiff's hand-related limitations were not consistent with medical records showing that Plaintiff did not report hand-related symptoms to his health care providers at the time. Specifically, the ALJ noted that when Plaintiff presented to orthopedist Dr. Karen Perser for treatment of a shoulder injury in September 2015, he reported that he had been doing "reasonably well in terms of function up until June 2015," when he was involved in a motorcycle collision. AR 3541, citing AR 2680-83. Plaintiff reported that he had been riding his motorcycle at approximately 25 miles per hour and ultimately had to "lay his bike down." AR 3541, citing AR. 2680. Plaintiff injured his shoulder when he lifted his bike back up, and described having difficulty lifting overhead since that time. AR 3541, citing 2680.

Dr. Perser's notes reflect that although Plaintiff complained of shoulder pain and upper extremity limitations, he did not report any problems with his hands. AR 2680-81. Although Dr. Perser performed a full upper extremity examination, she did not identify any hand limitations in her physical examination notes. AR 2681. The ALJ reasonably found that Ms. Noteboom's testimony as to the severity of Plaintiff's hand limitations was not consistent with the fact Plaintiff did not report

any hand-related symptoms to Dr. Perser. AR 3541. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (inconsistency with the medical evidence is a germane reason to reject lay witness testimony).

The ALJ also found that when considered in the aggregate, Plaintiff's activities—which included playing pool twice a week and riding a motorcycle—were not consistent with Ms. Noteboom's testimony. AR 3542. This too was a germane reason for discounting Ms. Noteboom's testimony that Plaintiff's hand limitations were so severe that he needed help shaving and dressing himself. *See Carmickle v. Commissioner, Soc. Sec. Admin.*, 553 F.3d 1155, 1164 (9th Cir. 2008) (inconsistency with evidence of a claimant's activities is a germane reason to discount lay witness testimony).

Plaintiff asserts that the ALJ misunderstood Ms. Noteboom's testimony about the amount of time he spent on small engine repair work during this period. (Doc. 11 at 19). Specifically, Plaintiff argues the ALJ mistakenly characterized Ms. Noteboom's testimony as indicating that on a good day, Plaintiff "could work up to eight hours" a day in his small engine repair shop. AR 3542. Even assuming the ALJ misstated Ms. Noteboom's testimony on this point, any error was harmless because he otherwise provided germane reasons for discounting her testimony about Plaintiff's hand-related limitations. *See Stout v. Commissioner, Soc. Sec.*

*Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (an error that is inconsequential to the non-disability determination is considered harmless).

### C.    Other Source Opinion

Plaintiff next argues the ALJ did not provide germane reasons for discrediting an "other source" opinion provided by occupational therapist Rebecca Norton. *See Popa v. Berryhill*, 872 F.3d 901, 906 (9th Cir. 2017) (An ALJ may discount "other source" opinions by providing "reasons germane to each witness for doing so."). In May 2015, Norton completed an initial occupational therapy evaluation in which she concluded Plaintiff had nerve compression resulting in "severe weakness in both grip and pinch strength." AR 1417. She indicated that Plaintiff would be limited "to only occasional use (1/3 of a work day or less) for reaching, grasping, handling and fingering, pushing, or pulling" and noted his "nerve issues can be aggravated [with] repetitive activities [and] endurance is poor [with] poor strength." AR 1419.

In its May 2022 remand order, the Court found that the prior ALJ erred by citing Plaintiff's daily activities as reason for discounting Norton's opinion without considering "whether those activities reflected—or failed to reflect—any impairments of Plaintiff's hands." AR 3715. The Court directed the ALJ on remand to reevaluate Norton's findings on Plaintiff's hand functionality, and to

incorporate any reevaluation into the hypotheticals posed to the vocational expert. AR 3717.

Consistent with the Court's remand order, the ALJ elicited additional testimony about Plaintiff's daily activities at the May 2023 hearing. AR 3591. As explained above, Plaintiff testified that during the relevant period he played pool every week at the bar and in his garage (AR 3591, 3600); rode his motorcycle one to two hours a week (AR 3594); did odd jobs like fixing his lawnmower and repairing small engines for his home-based business (AR 3584-85); replaced and painted the deck of his pontoon boat (AR 3596-97); and did some leatherwork (AR 3592). The ALJ reasonably discounted Norton's opinion in part based on "significant inconsistencies" between her assessment of Plaintiff's hand limitations and Plaintiff's ability to engage in activities requiring more extensive hand use. AR 3544.

The ALJ also discounted Norton's opinion about Plaintiff's hand functionality on the ground that the medical record was not consistent with her findings. AR 3544. For instance, the ALJ pointed out that "no other provider or examiner documents any significant difficulties with fine or gross manipulation, or with grip strength, prior to the date last insured." AR 3544. By way of example, the ALJ noted that a January 2010 examination by nurse practitioner Rebecca Sturdevant and Dr. Greg Vanichkachorn documented positive Tinel's on the left

but negative Phalen's,[2] described ranges motion as within normal limits, and noted that test grip strength was only slightly reduced on the left compared to the right. AR 3544, citing AR 319-20. The ALJ also cited April 2011 medical records from Dr. Thomas Jenko, who documented that Plaintiff had "normal grip strength bilaterally and he is able to do fine and motor gross fingering." AR 319-20, 3544. Although the ALJ noted there were few "meaningfully significant examination findings" in the record before the date last insured of December 2014, he legitimately found that those findings which did exist were not consistent with Norton's opinion.

Accordingly, the Court concludes that the ALJ provided germane reasons for discounting Norton's findings on Plaintiff's hand functionality.

## IV. <u>Conclusion</u>

For the reasons discussed above, the Court finds the ALJ's decision denying Plaintiff's claim for disability insurance benefits is supported by substantial evidence and free of prejudicial legal error. Accordingly,

---

[2] Tinel's and Phalen's are diagnostic tests for carpal tunnel syndrome. *See e.g.* https://my.clevelandclinic.org/health/diagnostics/25133-phalens-test (last visited February 25, 2025).

IT IS ORDERED that the Commissioner's decision is AFFIRMED.

DATED this 24th day of March, 2025.

_____
Kathleen L. DeSoto
United States Magistrate Judge